IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

WALTER BRINSON,            )
                          )
            Petitioner,    )
                          )
      v.                   )          CV 123-100
                          )
TEKETA JESTER, Warden,     )
                          )
            Respondent.    )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is currently before the Court on Respondent's motion to dismiss the petition as untimely. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 12), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

In November 1991, a jury in the Superior Court of Richmond County, Georgia, convicted Petitioner of aggravated sodomy and burglary, and the trial court sentenced Petitioner to life in prison. (Doc. no. 1, p. 1; doc. no. 11-1, p. 1; doc. no. 11-2, Brinson v. State, 430 S.E.2d 875 (Ga. Ct. App. 1993).) The Georgia Court of Appeals affirmed the judgments on April 29, 1993. Brinson, 430 S.E.2d at 876. Petitioner did not pursue any further direct appeal proceedings.

Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Ware County on February 29, 1996.  (Doc. no. 1; doc. no. 11-3; doc. no. 11-6, p. 1).  The state habeas court held a hearing on March 28, 1996, (doc. no. 11-6, p. 1), and after that hearing, with the assistance of a "jailhouse lawyer," Petitioner filed a motion to amend, as well as an amended brief in support of his state petition, (doc. nos. 11-4, 11-5).  The state habeas court denied relief in a written order filed July 22, 1996.  (Doc. no. 11-6, p. 7.)   The Georgia Supreme Court denied a Certificate of Probable Cause to Appeal on February 17, 1997, and the remittitur issued on March 20, 1997.  (Doc. no. 11-7, Brinson v. Gaither, S96H1919 (Ga. Mar. 20, 1997).)

Petitioner executed the instant federal habeas corpus petition on July 13, 2023, (doc. no. 1, p. 14), and he raises several claims for relief based on alleged ineffective assistance of trial counsel, insufficiency of the evidence, trial court errors regarding the admissibility of certain evidence, and improper treatment by the Department of Corrections ("DOC") once he was incarcerated based on his convictions,[1] (see generally id.)  Petitioner asserts he previously raised in state court all issues but the alleged improper treatment by the DOC.  (Id. at 3-12.)   Respondent moves to dismiss the federal petition as time-barred under 28 U.S.C. § 2244(d).  (See doc. nos. 12, 12-1.)  Petitioner did not respond to the motion to dismiss, but he did argue in his original petition and a subsequent motion that the

---

[1]Challenges to the fact or duration of a sentence "fall within the 'core' of habeas corpus," but "constitutional claims that merely challenge the conditions of a prisoner's confinement" are properly brought pursuant to § 1983.  Nelson v. Campbell, 541 U.S. 637, 643 (2004).  To the extent Petitioner makes claims that DOC policy regarding receiving legal assistance in prison impacted his ability to timely file his federal petition, the Court addresses those claims *infra* in its discussion of equitable tolling.  However, a DOC policy which Petitioner encountered *after* his incarceration does not form the basis for a challenge to his underlying state convictions that led to his imprisonment.

untimeliness of his petition should be excused because he "went into a mental health coma [and he was] no longer lucid after or during 1996 until 2023."  (Doc. no. 1, p. 12; doc. no. 7, pp. 2-4.)

## II.    DISCUSSION

### A.    The Petition Should Be Dismissed as Time-Barred

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

> (1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review."  Here, the Georgia Court of Appeals affirmed Petitioner's convictions on April 29, 1993.  Brinson, 430 S.E.2d at 876.

Petitioner did not move for reconsideration.  Nor did he seek a writ of certiorari from the Georgia Supreme Court or United States Supreme Court, and his convictions therefore

became final in 1993.[2]  See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) (explaining judgment for petitioners who do not seek certiorari from United States Supreme Court becomes final at "'expiration of the time for seeking such review" - when the time for pursuing direct review in this Court, or in state court, expires.'"); see also Phillips v. Warden, 908 F.3d 667, 671 (11th Cir. 2018) (same).  For persons filing a federal petition after the enactment of AEDPA but attacking convictions which became final prior to that date, the one-year statute of limitations began to run on the date of enactment, April 24, 1996.  See Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1211 (11th Cir. 1998).  Thus, Petitioner would have had until April 23, 1997 to file a challenge to his 1991 convictions for aggravated sodomy and burglary, subject to application of any statutorily-based or equitable tolling.

The Court recognizes that, pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction relief or other collateral review is pending in state court.  Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006).  Petitioner filed a state habeas corpus petition on February 29,

---

[2]The Court need not parse the exact date in 1993 on which Petitioner's convictions became final because it is clear that he did not seek any type of further direct review, meaning his conviction became final prior to the enactment of AEDPA.  See Hills v. Washington, 441 F.3d 1374, 1375-76 (11th Cir. 2006) (per curiam) (explaining 2004 Georgia Supreme Court Rule 40 change concerning exhaustion of all available state remedies when a claim has been presented to, and rejected by, the state court of appeals rather than state supreme court).  However, the Eleventh Circuit has explained, albeit in an unpublished decision, that Georgia Supreme Court Rule 40 does not make the Georgia Court of Appeals the court of last resort for purposes of seeking United States Supreme Court certiorari review, but rather for the purpose of seeking such certiorari review, the Georgia "state court of last resort" remains the Georgia Supreme Court.  Lewis v. Warden, Phillips State Prison, 641 F. App'x 878, 881-82 (11th Cir. 2016) (per curiam).  In any event, an additional ninety-day period would not change the fact that Petitioner's convictions became final prior to the enactment of AEDPA in 1996.  See Nix v. Sec'y for Dep't of Corr., 393 F.3d 1235, 1236-37 (11th Cir. 2004) (per curiam) (explaining convictions become final, for limitations purposes . . . "only after the expiration of the ninety days period during which appellant could have sought certiorari review in the United States Supreme Court").

1996, (see doc. nos. 11-1, 11-6, p. 1), and so AEDPA's one-year clock remained tolled throughout the state habeas corpus proceedings, including the time during which Petitioner sought a CPC from the Georgia Supreme Court and until issuance of the Supreme Court's remittitur on March 20, 1997, (doc. no. 11-7).  See Dolphy v.  Warden, Cent. State Prison, 823 F.3d 1342, 1345 (11th Cir. 2016) (per curiam) ("[W]hen a state habeas petitioner seeks a certificate of probable cause from the Georgia Supreme Court and the Court denies the request, the petitioner's case becomes complete when the Court issues the remittitur for the denial." (citations omitted)).[3]  However, once the remittitur issued, Petitioner waited more than twenty-six years to file the current federal habeas corpus petition.  (See doc. no. 1.)  Therefore, unless the limitations period was statutorily reset or otherwise equitably tolled, Petitioner's current federal challenge is time-barred.

**B.    The Limitations Period Was Not Otherwise Reset under AEDPA, and Petitioner Has Not Shown that He Is Entitled to Equitable Tolling or that a Fundamental Miscarriage of Justice Has Occurred**

Petitioner has not provided any explanation that would delay or reset his one-year statute of limitations under any statutory sections of AEDPA set forth above.  See 28 U.S.C. § 2244(d)(1)(B)-(D).   Nevertheless, an otherwise untimely § 2254 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred.

**1.  Equitable Tolling Is Not Warranted**

Equitable tolling can be applied to prevent application of AEDPA's statutory

---

[3]The Supreme Court denied the application for a CPC on February 17, 1997.  (Doc. no. 11-7.)  Although it is not clear Petitioner would have had the benefit of the additional time between the denial of a CPC and issuance of the remittitur in 1997, for the sake of argument, and giving Petitioner every benefit of the doubt, the Court will assume he is entitled to tolling during the additional time between February 17 and March 20, 1997.

deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).  Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances."  Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003), aff'd 544 U.S. 295 (2005).  The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1072 (11th Cir. 2011).  Vague or conclusory allegations are insufficient to satisfy Petitioner's burden to show how he acted with diligence.  Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209-10 (11th Cir. 2014).  As to establishing an extraordinary circumstance, Petitioner must show a causal connection between the alleged circumstance and the late filing, San Martin, 633 F.3d at 1267, and the extraordinary circumstance must be "unavoidable even with diligence."  Sandvik v. United States, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam).

Petitioner argues he is entitled to equitable tolling because he went into a mental health coma in 1996 and he only became lucid when he started taking new medication in 2023.  (See doc. no. 1, p. 12; doc. no. 7, pp. 2-4.)  However, the mere assertion of mental incapacity "without more," does not justify equitable tolling.  Lawrence v. Florida, 421 F.3d 1221, 1227 (11th Cir. 2005), aff'd 549 U.S. 327 (2007); see also  Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (explaining "mental impairment is not per se a

reason to toll a statute of limitations"); <u>Dam v. United States</u>, No. 2:15-cv-125, 2:11-cr-22, 2017 WL 583139, *3-4   (S.D. Ga. Feb. 13, 2017) (collecting cases for proposition that claims of mental incompetence, standing alone, not sufficient to invoke equitable tolling), *adopted by* 2017 WL 1015328 (S.D. Ga. Mar. 15, 2017).  Rather, a petitioner must show a "causal connection between his alleged mental incapacity and his ability to file a timely petition."  <u>Lawrence</u>, 421 F.3d at 1226-27; <u>see also</u> <u>Spears v. Warden</u>, 605 F. App'x 900, 904-05 (11th Cir. 2015) (*per curiam*) (affirming denial of equitable tolling where petitioner provided no explanation how alleged mental health issues affected his ability to time file petition); <u>Whitehead v. Crickmar</u>, Civ. Act. No. 5:16-cv-166, 2016 WL 7743039, at *2-3 (M.D. Ga. Nov. 22, 2016), *adopted by* 2017 WL 12532 (M.D Ga. Jan. 12, 2017) (requiring more than showing of difficulty understanding and acting upon legal rights for application of equitable tolling and explaining "inability to read, write, and speak English is insufficient to establish equitable tolling").

Here, Petitioner has submitted no evidence in support of his contention he was in a "mental health coma" from 1996 until 2023.  At best, he has submitted in the petition his own unsupported, conclusory statements about his mental health, (doc. no. 1, pp. 5-11), and an additional, unsupported declaration of a fellow inmate stating *he* approached Petitioner at some unknown time and discovered Petitioner was illiterate and mentally ill, (doc. no. 7, p. 3.)  When the Court extended Petitioner's time to respond to the motion to dismiss, it explained to Petitioner he had not provided anything to substantiate his claim of a "mental health coma" and/or a severe mental illness that prevented him from communication with others, *e.g.*, documentation in the form of examination or treatment notes, a doctor's diagnosis, or medication list.  Thereafter, not only did Petitioner fail to provide any

substantiation for his claims of mental impairment, but he also completely failed to respond to the motion to dismiss.

Moreover, Petitioner maintains he has been mentally ill his entire life, (doc. no. 7, p. 5), yet he was apparently able to sufficiently communicate with other jailhouse lawyers to proceed *pro se* with his state collateral proceedings, (doc. nos. 11-3, 11-4, 11-5).  Indeed, in his state habeas proceedings, Petitioner asserted he was illiterate, (doc. no. 11-5), and acknowledged having a "very-below average IQ," (doc. no. 11-4, p. 2), but he was able to sufficiently communicate with a fellow inmate who helped him with his legal papers.  Unlike the case cited by Petitioner in support of his request for equitable tolling, Colbert v. Toole, Civ. Act. No. 1:14-CV-2231-AT-JFK (N.D. Ga. 2015), there is nothing in the record such as a Treatment/Habilitation Plan Review, description of symptoms of his mental illness, or types of medicine which may have been prescribed for Petitioner that shed any light on the severity or non-severity of Petitioner's mental status.   Aside from the lack of any documentation about Petitioner's current or former mental health treatment or symptoms, there is nothing before the Court explaining the reason for and/or substantiation of a dramatic shift in Petitioner's lucidity in 1996 and then again at some unspecified time in 2023 such that he was able to sufficiently function in pursuit of state habeas relief, became comatose, but then sufficiently recovered to file a federal petition.  Simply put, Petitioner fails to raise a substantial factual issue about whether a causal connection existed between his alleged mental incapacity and his ability to timely file a federal petition such that equitable tolling might be available to him.  See Lawrence, 421 F.3d at 1226-27; Spears, 605 F. App'x at 904-05; Whitehead, 2016 WL 7743039, at *2-3; Dam, 2017 WL 583139, *3-4; Birt v. Oubre, No.

CV 112-048, 2013 WL 395382, at *3-4 (S.D. Ga. Jan. 4, 2013), *adopted by* 2013 WL 394521 (S.D. Ga. Jan. 31, 2013) (Hall, C.J.).

Even assuming for the sake of argument Petitioner had shown the required causal connection, he must still show the diligent pursuit of his rights for equitable tolling to apply. Doe v. United States, 469 F. App'x 798, 800-01 (11th Cir. 2012) (*per curiam*).  He has not done so.  First, Petitioner utilized "jailhouse lawyers" to assist him with his state habeas corpus proceedings, which included filings in 1996 when Petitioner claims he fell into a mental health coma for an unidentified reason.  (See doc. nos. 11-3, 11-4, 11-5.)[4]  Second, Petitioner has provided no details about his efforts to obtain relief over the course of twenty-six years, except to say in Ground Four of his petition that "prison policy IIA14-001 will not allow law library aids or anyone to assist me."[5]  (Doc. no. 1, p. 10.)  Upon examination, however, Standard Operating Procedure 227.03 (IIA14-001) Access to Courts,[6] provides that although "Reference Library staff members, GDS staff members, and offender library clerks shall not provide legal advice," § IV(D)(7)(c), they may obtain assistance for offenders who are illiterate, cannot read English or have other special needs," id. § (c)(5).  Moreover, the

---

[4]As the state habeas court issued its order denying relief on July 22, 1996, and the state Supreme Court denied the CPC application on February 17, 1997, Petitioner must also have been able to file his CPC application during his "mental health coma."

[5]As noted in Part I, note 1, *supra*, although Petitioner lists inadequate access to legal help and research time in the prison library as Ground Four in his federal petition, the Court considers this as an argument in support of equitable tolling, not a habeas corpus challenge to his underlying 1991 convictions.  If Petitioner chooses to pursue a § 1983 claim about his access to legal resources, nothing in this recommendation on his habeas corpus petition should be construed as making any determination on the viability of any such claim.

[6]DOC policies and procedures are available at https://gdc.georgia.gov, Menu, select About GDC, Policies and Procedures, Facilities Division Policies, 227 Policy-Facilities Conditions of Confinement, select 227.03 (IIA14-001) Access to Courts (last visited Dec. 20, 2023).

DOC "expressly allows offenders to assist other offenders in conducting legal research and preparing cases." Id. § IV(G)(2).

Thus, the policy cited by Petitioner does not support his contention that he was unable to obtain help from other "jailhouse lawyers" to assist him with a federal habeas corpus petition, and the fact that he was able to obtain help with his state habeas proceedings further undercuts his current argument.  To the extent Petitioner may be attempting to argue his limited time in a law library or limited access to legal research impeded his efforts to timely file his federal petition, his non-specific contention does not support the application of equitable tolling because the Eleventh Circuit has "held that no access or limited access to a law library does not qualify as an extraordinary circumstance to warrant equitable tolling." Bass v. Att'y Gen., No. 20-10985, 2022 WL 1658637, at *2 (11th Cir. May 25, 2022) (*per curiam*) (citing Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2000)); see also Newton v. Benton, Civ. Act. No. 120-162, 2021 WL 1324529, at *4 (S.D. Ga. Mar. 15, 2021) (citing Miller v. Florida., 307 F. App'x 366, 368 (11th Cir. 2009) (*per curiam*) for proposition that limited or "restricted access to a law library, lock-downs, and solitary confinement do not automatically qualify for equitable tolling"), *adopted by* 2021 WL 1321301 (S.D. Ga. Apr. 8, 2021) (Hall, C.J.)). In the absence of any record evidence regarding Petitioner attempting to exercise due diligence to timely file his federal petition, equitable tolling is not warranted.  See Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004) (requiring showing by petitioner seeking application of equitable tolling that he "undertook any action that would suggest reasonable diligence under the circumstances"); Williams v. United States, Nos. 1:16-CR-427, 1:23-CV-1579, 2023 WL 5727308, at *3 (N.D. Ga. Aug. 15, 2023) (collecting cases for proposition that petitioner must show diligent

pursuit of his rights and in absence of showing any steps undertaken to timely file petition prevented finding of necessary diligence for application of equitable tolling), *adopted by* 2023 WL 5733837 (N.D. Ga. Sept. 5, 2023).

In sum, Petitioner has not shown extraordinary circumstances stood in his way and that he has been pursuing his rights diligently in the twenty-six years between when his state habeas proceedings concluded and the filing of federal habeas corpus petition in 2023. Nor has Petitioner shown any delay resulting from the diligent pursuant of his rights - indeed as described above there has been no showing of diligence - prevented him from timely filing a federal petition. Therefore, Petitioner is not entitled to the application of equitable tolling.

### 2. The Fundamental Miscarriage of Justice Exception Does Not Apply

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category:

cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394-95.

Petitioner has not shown that a miscarriage of justice will occur if his claims are not considered. Petitioner fails to present any evidence, much less new and reliable evidence, to show he did not commit the offenses of which he was convicted such that no reasonable juror would have found him guilty beyond a reasonable doubt. Indeed, he never claims in his petition that he did not commit the offenses of which he was convicted. Rather, his stated grounds for relief focus on alleged legal errors committed by the trial court and counsel. (See, e.g., doc. no. 1.) Petitioner's arguments concerning admission of allegedly impermissible hearsay, "false" DNA evidence that was admitted against him even though the "chain of command" was broken when it was collected, insufficiency of the evidence to satisfy the elements of burglary, and ineffective assistance of counsel that resulted in Petitioner not testifying in his own defense were all known to him at the time of trial and do not meet the requirements of new and reliable evidence. In fact, Petitioner's counsel raised on direct appeal the issues related to hearsay, the chain of custody of DNA evidence, and the alleged error in failing to grant a directed verdict of acquittal on the burglary charge. (See doc. no. 11-1.) In sum, Petitioner has presented no *evidence* to support, let alone satisfy, the high burden that no reasonable fact finder could have found him guilty of the offense for which he was convicted. See Ray v. Mitchem, 272 F. App'x 807, 810-11 (11th Cir. 2008) (*per curiam*) (emphasizing "actual innocence means factual innocence, not mere legal insufficiency") (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). Thus, the fundamental miscarriage of justice exception does not save the untimely petition from dismissal.

### III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 12), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 20th day of December, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA